UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DASHAWN JOHNSON,

       Plaintiff,                      CIVIL ACTION NO. 12-11780

       v.                            DISTRICT JUDGE PATRICK J. DUGGAN

                                   MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Dashawn Johnson challenges the Commissioner of Social Security's final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 10). Judge Patrick J. Duggan referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the ALJ's decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    REPORT**

    *A.    Administrative Proceedings*

Plaintiff applied for supplemental security income on August 12, 2008 alleging he became disabled on July 13, 2003 (Tr. 26). The Commissioner initially denied Plaintiff's application (Tr. 26). Plaintiff appeared with counsel for a video hearing before Administrative

-1-

Law Judge ("ALJ") Elliott Bunce, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 26-31). Plaintiff requested an Appeals Council review (Tr. 1). On April 11, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.     *ALJ Findings*

Plaintiff was 35 years old when his application was filed. He has a 10th grade education and no past relevant work (Tr. 30, 71). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since his application date (Tr. 28).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: hernia, back pain, hypertension and obesity (Tr. 28).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 28).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> work that does not require: exertion above the sedentary level . . . or more than simple, routine, repetitive tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; and that allows the alternating of sitting and standing at will.

(Tr. 28).

At step four, the ALJ found that Plaintiff could not perform his previous work, as he has no past relevant work (Tr. 30).

At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform a significant number of jobs available in the national economy, such as video surveillance monitor

(82,000 available jobs), information clerk (160,000 available jobs) and order clerk (180,000 available jobs) (Tr. 31).

    *C.*    *Administrative Record*

        1.    **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified he is 5'7" and weighs between 270-280 pounds (Tr. 71). Plaintiff has rectal bleeding, stomach pain, pain in his left leg, constipation, high blood pressure, trouble sleeping, low energy and nausea (Tr. 72-74, 77). In addition, Plaintiff has nightmares about getting shot; he wakes up in a sweat (Tr. 77). Plaintiff testified he cannot continuously lift any amount of weight over the course of an eight hour day; he can only walk from his bedroom to the front porch and stand 10-15 minutes (Tr. 74-75). He is unable to complete tasks, has trouble concentrating and takes naps during the day (Tr. 77).

Plaintiff does not drive, and he only picks up clothes around the bed (Tr. 71). Plaintiff goes grocery shopping once a month (Tr. 72).

        2.    **Vocational Expert**

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who: is Plaintiff's age and has his educational and work history. The individual can perform work that does not require exertion above the sedentary level and consists of no more than simple, routine repetitious tasks with one or two-step instructions and the work cannot have strict production quotas (Tr. 80). The VE testified that such an individual could work as a video surveillance monitor (82,000 available jobs nationally), information clerk (160,000 available jobs nationally) and order clerk (180,000 available jobs nationally) (Tr. 80). The individual would be precluded from work if he missed two or more days a month, he had to take more than the scheduled breaks, or he was off task 20 percent of the time (Tr. 80-82).

    *D.*    *Plaintiff's Claims of Error*

Plaintiff argues that the jobs identified by the VE are inconsistent with the Dictionary of Occupational Titles ("DOT") and the ALJ did not consider Plaintiff's difficulty in concentration.

## III. DISCUSSION

### A. *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

C.    *Analysis*

1.    **VE's Testimony Conflicts with the Job Descriptions in the DOT**

Plaintiff first argues that the VE's testimony conflicts with the job descriptions in the DOT. Specifically, Plaintiff says the VE incorrectly stated that the "information clerk" and "order clerk" jobs have an SVP[1] of two when the DOT says the "information clerk" job has an SVP of four and the "order clerk" job requires a reading level of three. Plaintiff also argues that the "video surveillance monitor" job is not listed in the DOT. In *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009), the Sixth Circuit held that a conflict does not exist simply because a VE and the DOT use different terminology to describe employment positions. *Id.* at

---

[1]"The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p.

605. Like *Lindsley*, Plaintiff failed to identify a conflict between the DOT and the VE's testimony simply because "video surveillance monitor" is not identified with that name in the DOT. *See Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 167-168 (6th Cir. 2009):

> The fact that [the VE's] description of a . . . job does not align perfectly with the DOT's listed occupation titles should not be surprising given that "[t]he DOT contains information about most, but not all, occupations." SSR 00-4p, 2000 WL 1898704 at *2. Moreover, . . . the DOT's job classifications are collective descriptions of "occupations" that can encompass numerous jobs. *Id.* ("The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs."); *see also* SSR 96-9p, 1996 WL 374185 at *10 n.4 (S.S.A. July 2, 1996) ("An 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties. Within occupations (e.g., 'carpenter') there may be variations among jobs performed for different employers (e.g., 'rough carpenter').").

As stated in *Beinlich*:

> Even if there were an inconsistency, [Plaintiff] has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by [Plaintiff] until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE whether there was "any [conflict . . . between [her] testimony about [Plaintiff's] past work and about the[] other jobs to which [she] testified on the one hand, and on the other information contained in the [DOT]]." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id.* This obligation falls to [Plaintiff's] counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that [P]laintiff's counsel did not do so is not grounds for relief. *See Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008). [Plaintiff's] first argument is without merit.

*Beinlich*, 345 Fed.Appx. at 168-169. Even assuming it was not too late for Plaintiff to raise his argument that the "information clerk" and "order clerk" jobs have different SVP levels in the DOT than the VE identified – and the Court eliminated those positions – Plaintiff's argument

-7-

still lacks merit. Plaintiff could still perform work as a "video surveillance monitor," which he does not dispute has an SVP level of two.

### 2. Hypothetical Question to the VE

Plaintiff next argues that the ALJ's hypothetical question to the VE did not encompass his difficulty with concentration: "[Plaintiff] states that his condition affects his sleep and concentration. He has nightmares; wakes up, sweat, [and is unable] to go to sleep." (Dkt. No. 8 at 8).

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325 at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

Here, the ALJ's hypothetical accounted for Plaintiff's concentration problems:

> I would ask you to consider an individual of [Plaintiff's] age, education, and work history who's able to perform work that does not require exertion above the sedentary level *that consists of no more than simple, routine, repetitious tasks with one or two-step instructions and that does not impose strict production quotas such as the requirement to produce a specified number of units of work in a specified period of time*.

(Tr. 80) (emphasis added). The ALJ's RFC determination mirrored the hypothetical: "[Plaintiff] has the [RFC] to perform work that does not require . . . more than simple, routine, repetitious

-8-

tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time" (Tr. 28). The ALJ further explained that "[t]he RFC specifies simple tasks and no strict production quotas, *to address any reduction in concentration or pace*" (Tr. 30) (emphasis added).

There is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[2] However, there is also authority that has found an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[3] In analyzing the case

---

[2] *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[3] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible "); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and

law, this Magistrate Judge agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task.  *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks.  Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace"). In a similar case, this evaluative process was explained as follows:

---

carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").

-10-

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325 at *7; *see also Lewicki*, 2010 WL 3905375 at *3.

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence and pace, such that the claimant had limitations in performing at a consistent pace. *See Hess*, 2008 WL 2478325 at *7. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id.* at *8.

In this case, Plaintiff's medical records do not support the proposition that he has moderate limitations in concentration, persistence and pace. The only reference to concentration in Plaintiff's medical records is an evaluation dated November 4, 2010 that says "[Plaintiff's] immediate, recent and remote memory is intact with normal concentration" (Tr. 190). Accordingly, the hypothetical question fully and accurately incorporated Plaintiff's physical and mental limitations, and substantial evidence supports the ALJ's finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley*, 820 F.2d at 779.

### 3. Psychiatric Consultative Examination

Plaintiff's final argument is that the ALJ failed to send Plaintiff for a psychiatric consultative examination ("CE") as requested by Plaintiff's attorney:

-11-

> ALJ: We don't have much in the way of work record – I'm sorry, medical records here, and I think the best thing for us to do is to have [Plaintiff] examined by one of our doctors to determine what his capacity is, and I'd ask for a capacity functional statement from that doctor. And we have a younger individual here, so it's really going to come down to whether he retains the capacity for even sedentary work. What I may do is get – ask kind of a generic question when we get to it of [the VE], really just to establish that the jobs are out there. It will not – we don't have enough to know at this point whether [Plaintiff] is capable of those jobs. That would remain to be seen.
>
> ATTY: I do agree with Your Honor's assessment and line of thought. I would also ask, though, that in addition to the physical component, when I was looking at this record a little more and since my last hearing in '06 with this gentleman – excuse me – in the function report . . . *there's a lot of talk about problems because of . . . the pain with concentration and paying attention to tasks and things, and I believe there may be a component of an adjustment disorder present, and so I was wondering if you – when you're doing this also to please consider maybe sending him out for a psych CE as well just to cover that basis*.
>
> ALJ: I'll consider it[.]

(Tr. 75-76) (emphasis added).

"An ALJ has discretion to determine whether further evidence, such as additional testimony or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 CFR §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled . . ., we *may* ask you to have one or more physical or mental examinations or tests.") (Empahsis added)). The ALJ determined he did not have sufficient information regarding Plaintiff's physical impairment – and ordered a consultative examination – but he found there was sufficient evidence to evaluate Plaintiff's mental condition. The ALJ did not abuse his discretion in denying Plaintiff's request for additional testing.

-12-

## IV. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                s/Mark A. Randon
                Mark A. Randon
                United States Magistrate Judge

Dated: February 1, 2013

<u>*Certificate of Service*</u>

-14-

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 1, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*

*(Substitute)*

*Case Manager*
